■ HIGHLAND VIEWS CORPORATION, Appellant, v DONALD H. GERDTS et al., Defendants. (Action No. 1.) ADIRONDACK LAND CORPORATION, Respondent, v ADIRONDACK MOUNTAIN MEADOW CORPORATION et al., Defendants, and HIGHLAND VIEWS CORPO-

RATION, Appellant. (Action No. 2.)—Casey, J. Appeals (1) from an order of the Supreme Court (Dier, J.), entered January 30, 1992 in Warren County, which, *inter alia,* granted a motion by plaintiff in action No. 2 to sever action No. 1 from action No. 2, and (2) from an order of said court, entered January 31, 1992 in Warren County, which, *inter alia,* granted plaintiff's motion for summary judgment in action No. 2.

Highland Views Corporation (hereinafter Highland) contracted with Adirondack Land Corporation (hereinafter ALC) to purchase 718 acres of vacant land located in the Town of Horicon, Warren County. At the closing, Highland's president, Donald Gerdts, assigned the contract to Adirondack Mountain Meadow Corporation (hereinafter AMMC). As part of the purchase price, AMMC executed a purchase money mortgage.

Highland thereafter commenced action No. 1 against Gerdts and AMMC alleging, *inter alia,* that Gerdts, who was the president and sole shareholder of AMMC, interfered with Highland's contractual rights and breached his fiduciary duty as Highland's president. Highland filed a notice of pendency in the Warren County Clerk's Office. In the meantime, AMMC defaulted on its mortgage obligation and, after notice and demand, ALC commenced action No. 2 to foreclose on the purchase money mortgage executed by AMMC. Highland was named as a defendant in action No. 2 because of the notice of pendency filed in connection with action No. 1.

Highland's answer in action No. 2 included counterclaims seeking damages for ALC's alleged breach of its contract with Highland. The two actions were apparently joined and AMMC admitted its default on the mortgage obligation. ALC thereafter moved, *inter alia,* to sever the two actions and for summary judgment in action No. 2. Highland cross-moved for summary judgment in action No. 2. Supreme Court granted ALC's motion, severed action No. 1 from action No. 2, appointed a Referee to compute the amount due to ALC, denied Highland's cross motion, and struck Highland's answer and counterclaims. Highland appeals from the two orders entered by Supreme Court.

On the severance issue, Supreme Court did not err in permitting the foreclosure action to go forward against AMMC *(see, Marine Midland Bank v Berley,* 90 AD2d 646). It is undisputed that ALC transferred the property to AMMC and obtained a purchase money mortgage from AMMC. Action No. 1 seeks to determine the rights and liabilities of Highland, Gerdts and AMMC. The validity of ALC's mortgage is not an

issue in action No. 1 and the rights of ALC, which is not a party, cannot be affected by the action. Accordingly, action No. 1 was properly severed from the foreclosure action.

We also see no error in Supreme Court's grant of summary judgment to ALC on its foreclosure cause of action in action No. 2. It is undisputed that the mortgagee, AMMC, is in default. Highland's defenses in action No. 2 relate to its breach of contract claims against ALC and we agree with Supreme Court that the question of whether ALC breached its contract with Highland has no bearing on ALC's right to foreclose the mortgage given by AMMC. Nor has Highland raised any other issue which would preclude foreclosure of the mortgage.

Supreme Court dismissed Highland's counterclaims because of the lack of a relationship between the counterclaims and ALC's foreclosure cause of action. We are of the view that, instead of dismissal, severance of the counterclaims from the foreclosure cause of action is appropriate in these circumstances (see, Frederick v Thomas, 174 AD2d 860). Accordingly, we must address the merits of the parties' motions for summary judgment on the counterclaims. Highland contends that the purported assignment of the contract to AMMC by Gerdts was invalid and, therefore, ALC's sale of the property to AMMC breached ALC's contractual obligation to Highland. We agree with Highland that because of the absence of shareholder approval, Gerdts lacked the authority to assign Highland's only asset (see, Business Corporation Law § 909 [a]). We also agree with Highland that ALC could not rely on Gerdts' apparent authority as Highland's president because "those who deal with corporations are bound by the statutory limitations on the authority of corporate officers" (Vig v Deka Realty Corp., 143 AD2d 185, 187, lv denied 73 NY2d 708). There is, however, no evidence that ALC breached its contractual obligation to convey the property to Highland.

The evidence establishes that the closing was delayed for several months because of title problems which ALC attempted to resolve. ALC eventually insisted that the closing go forward, with Highland accepting such title as ALC could give, or that the contract be terminated. The closing was, therefore, scheduled and ALC's attorney prepared the necessary documents to convey the property to Highland, including a signed deed, which he brought to the closing. ALC, which was represented at the closing by its attorney, first learned of AMMC's involvement when, at the closing, Gerdts' attorney stated that the contract was to be assigned to AMMC.

During the period between the execution of the contract and

the closing, Gerdts and Peter Kenny, a 50% shareholder of Highland, had a disagreement over the manner in which the portion of the purchase price payable at closing was to be financed. As a result of this disagreement, additional funds from other investors had not been acquired by Highland and, therefore, Gerdts insisted that Kenny provide one half of the needed money. According to Gerdts, he appeared at the closing unsure of whether Kenny would appear with Kenny's half of the money needed to close on behalf of Highland. As a result, Gerdts brought with him the one half of the funds he was to provide, plus the additional funds needed to close which he had obtained from another person interested in investing in the property. When Kenny did not appear at the closing, Gerdts assigned the contract to AMMC and ALC conveyed the property to AMMC.

In these circumstances, ALC did not breach its contract with Highland. ALC gave Highland a reasonable time to close. The closing was more than four months after the date set in the contract and one year after the contract was executed. There is no evidence that Highland made a tender of the purchase price fixed in the contract or was ready, willing and able to close. Gerdts appeared at the closing in his dual capacity as the president of Highland and the president of AMMC. As the president of Highland, he had only one half the funds necessary to close; as the president of AMMC, he had the full amount. Nor is there any evidence that ALC did anything to prevent Highland from fulfilling its obligation under the contract. To the contrary, ALC's attorney appeared at the closing with all of the documents necessary to convey the property to Highland. As Kenny explained in his examination before trial in action No. 1, Highland "was precluded from consummating the contract of sale by virtue of the actions of Mr. Gerdts". We conclude that when Highland appeared at the closing through its president, Gerdts, who failed to tender the purchase price on behalf of Highland, ALC was justified in considering its contractual obligation to Highland at an end and conveying the property to AMMC. In these circumstances, as a matter of law, Highland's counterclaims for damages for breach of contract must be dismissed *(see, Madison Invs. v Cohoes Assocs.*, 176 AD2d 1021, *lv dismissed* 79 NY2d 1040). Supreme Court's orders should, therefore, be affirmed.

Mikoll, J. P., Levine, Mercure and Mahoney, JJ., concur. Ordered that the orders are affirmed, with costs.